In the Matter of the Application of CHARLES E. TONEY, a Justice of the Municipal Court of the City of New York, Petitioner, for the Removal of CORNELIUS A. HUGHES, Respondent, from His Position of Deputy Clerk of the Municipal Court of the City of New York, Borough of Manhattan, Tenth District.*

First Department, December 9, 1932.

*Aiken A. Pope*, for the petitioner.

*Richard E. Carey* of counsel [*A. C. Stuart Williams* with him on the brief], for the respondent.

MARTIN, J. Pursuant to the provisions of section 1383 of the Greater New York Charter proceedings were commenced by Hon. CHARLES A. TONEY, a justice of the Municipal Court of the City of New York, to remove Cornelius A. Hughes, a deputy clerk of that court assigned to the Tenth District, Borough of Manhattan. By virtue of the authority vested in the Appellate Division, the parties were directed to appear before the court and submit their proofs. The ground urged for removal is that Hughes, the owner and publisher of a periodical known as *The Fraternal Review*, while acting as deputy clerk, knowingly, falsely and maliciously reported

* See, also, *People ex rel. Hughes* v. *Sheriff of New York County* (237 App. Div. 347).

in his paper a proceeding which had been heard before the petitioner as such Municipal Court justice.

The proceeding which petitioner contends was inaccurately reported in *The Fraternal Review* is entitled " Fifty West 106th Street Corp. v. Donald J. Henderson." The court tried and decided this proceeding in favor of the plaintiff and on March 31, 1932, wrote an opinion setting forth his reasons therefor.

The article complained of by the petitioner is as follows: " Editor Trotter of the Boston Guardian seems to have eased one over on the local colored press of this city, for in its issue of May 21st, it carried a front page article which we quote, and in which Judge Charles E. Toney is the target. The Guardian's article which bears date of May 17th from New York (C.N.A.) says:—

" 'Attacks Judge Toney. I. L. D. Claims Colored Judge Upheld Exclusion of Colored from Apartment House Elevators.

" ' Dogs get preference over Colored people in the elevators of a lot of ritzy and near ritzy New York apartments and that's O. K. with Judge Charles E. Toney of the 10th district municipal court. The case was that of Donald Henderson, white, who had been living at 50 West 106th Street, secretary of the National Students League, prominent in the recent student strike at Columbia University.

" ' A number of Colored students and personal friends came to see Mr. Henderson. They were denied the use of the elevator and forced to walk up the back way. Henderson first protested and then moved to another apartment where his friends could get to see him without being sorted out first by the landlord and elevator operator. The landlord sued, claiming the lease had been broken and that he had a right to keep Colored out of the elevator if he wished. The case came up before Judge Toney, one of two Colored Judges in New York. The landlord was right Judge Toney decided.

" ' J. Meerbaum, attorney for the International Labor Defense, who defended Henderson pointed out that this decision sets a precedent for all New York landlords who want to run their elevators for whites and dogs only.

" ' While we don't wish to criticize the opinion of the Honorable Charles E. in the case quoted, it does seem to us that a plea of " constructive eviction " should have been Mr. Henderson's answer to his landlord's complaint of breaking his lease; for surely even Judge Toney in view of the Civil Rights Law of this State before him would hardly have held that a landlord enjoyed the right under the law to restrict Mr. Henderson's visitors to any particular race or creed of men, and if he attempted to do so a plea of constructive eviction should have been his weapon of defense.'

" The article goes on to state that Judge Toney's decision estab-

lishes a precedent for discrimination; of course, the Guardian was not aware that the Appellate Court reversed more than fifty per cent of the appeals from Judge Toney's decisions last year."

The petitioner charges that because of the publication of this false and grossly inaccurate report of the proceedings, respondent has brought ridicule and disrespect upon the Municipal Court and is unfit to be a deputy clerk or to hold any other position in that court.

The answer made to the petition by the respondent is that it does not state facts sufficient to constitute a cause for removal; that the charges contained therein are not sufficiently detailed to give the respondent an opportunity to answer same or to present a defense; that the petitioner assumes that the publication in question is false and grossly inaccurate but does not set forth in his petition what the true facts are, and in what respect the publication is false and grossly inaccurate.

The respondent also contends that inasmuch as he has already been cited for contempt of court for the very acts alleged in the petition to be false and grossly inaccurate, from which order there is now pending an appeal to determine whether or not this publication is false and grossly inaccurate, this court should not now pass upon the facts. At the opening of the trial the court denied the motion to dismiss the petition on the ground of insufficiency.

The petitioner then offered in evidence a transcript of the record in the case of Fifty West 106th Street Corp. v. Henderson; a certified copy of his opinion in that case and a copy of *The Fraternal Review* for June, 1932, containing on page 10 thereof the article in question. The respondent thereupon produced several witnesses in his behalf, among them the petitioner, who testified to the fact that his decision in the case in question was based on the law governing the subject, and that no other decision could properly be made upon the testimony set forth in the minutes which are in evidence as an exhibit. Evidence was offered showing that the clerk had access to the records and knew or, without any difficulty, might have ascertained the true facts.

The article, which was partly a reprint, was contrary to the facts in the case and held the justice up to ridicule and contempt and tended to incite racial prejudice. It undertook to show that this justice, a member of the colored race, was wrongly deciding cases against his own people and in favor of members of the white race. The writer of the article did not stop with the reprint of a false statement but added his own criticism of the justice and referred to the fact that the justice was reversed, when appeals were taken, in more than fifty per cent of the cases tried by him,

and that it was likely, therefore, that on appeal the decision would not be upheld. This latter statement was not the report of a proceeding but a malicious attempt to injure the reputation of the justice.

It is very apparent that this clerk is not working in harmony with the justice and is openly and unfairly criticising his conduct. A clerk who is either a party to or inspires an article such as appeared in this periodical should not be permitted to remain in the position of clerk of any court. His conduct appears to have been the result of resentment, growing out of some real or fancied grievance.

The record shows that the justice was dealt with in an unfair manner; that the criticism was unfounded, and that the alleged statements of fact were false. A deliberate attempt was made to injure the reputation of the justice among the colored people, although he was honestly endeavoring to perform the duties of his office and accurately following the law governing landlord and tenant cases.

Courts and judges are not immune from justifiable criticism. When a judge improperly conducts court proceedings he thereby invites criticism. We have no desire by our decision in this case to stifle criticism especially when it may lead to improvements in the administration of justice, resulting in better service to the people for whose welfare the courts have been established.

Where a judge has courageously declared what he believes to be the law and is conscientiously performing his work, he should be encouraged and his reputation should be protected. Surely a clerk of his court should not, for some ulterior purpose, be permitted to falsely attack his integrity.

Since this proceeding was commenced, the clerk has again tried his editorial skill. In the October, 1932, issue of *The Fraternal Review*, which is in evidence, under the heading, " Another Frankenstein," he wrote and published the following editorial: " The story of the mythical Frankenstein Monster that turned upon its creator, came rather forcibly to the minds of Colored Harlem this month when the news went out that the editor of this paper had been fined and imprisoned without bail for having dared to criticize his own creation; the colored people of Harlem not having forgotten that it was the judicious distribution of 27,000 copies of a special edition of the Fraternal Review that breathed the breath of judicial life into the monster that tried to destroy its maker. Well, in this case, in order to save himself from destruction, a well-timed bomb known as the Writ of Habeas Corpus was used by the editor with destructive effect. It is highly possible that the editor may seek redress for the humiliation caused by the monster's impas-

sioned rampage. For the many expressions of sympathy and offers to help that came to us during our brief·battle to subdue the monster, we are deeply and sincerely grateful. We harbor no feeling of revenge against a jurist who in his rabid desire for revenge upon us for a matter entirely removed from our published article, for that was well-known to have been a mere subterfuge, for ' Vengence is Mine ' saith the Lord, and the Lord works in mysterious ways at times. Sometimes His vengeance is swift, and sometimes it is slow, but always sure. Ignoring the ethics of one's profession has never raised a man in the estimation of his fellowmen, and the reverse effect in this particular case has been swift and unmistakable."

This article is another attack on the justice and while it has nothing to do with court matters, it forcibly indicates the attitude of this clerk toward the justice and his determination to " put the Judge in his place," by calling attention to the fact that the clerk was responsible for the advancement and success of the judge.

Honest, open and fair criticism should be encouraged. Free speech and honest discussion should meet with approval, especially when made for constructive purposes, but foul speech and malicious attacks, having as their motive injury to the reputation of another, should not be tolerated.

The application for the removal of Cornelius A. Hughes from the position of deputy clerk of the Municipal Court of the City of New York should be granted.

FINCH, P. J., MERRELL, SHERMAN and TOWNLEY, JJ., concur.

Application granted.